**RECEIVED**

NOV 2 7 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# United States District Court
IN THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Cassie Eleson | Case No. 1:06-1553 (EGS) |
| Plaintiff, | |
| v. | RESPONSE TO MOTION TO DISMISS |
| United States Government | |
| Defendant. | |

Plaintiff hereby replies to defendant's Motion to Dismiss, addressing the matters raised therein.

In the introduction (untitled first paragraph), counsel mischaracterizes the instant case as seeking "damages for alleged "wrongful collection". Counsel's use of quotation marks indicates that counsel is fully aware that her misrepresentative term of art, e.g., "wrongful collection", is nowhere found in the Amended Complaint. Counsel also places in quotes "'replevin'", apparently to further mischaracterize Plaintiff's action. Counsel then refers to Plaintiff's desire for an injunction, apparently overlooking the fact that such relief was to be predicated upon factual findings in the case, including but not limited to, a finding that lack of evidence of a procedurally proper, valid assessment, renders a purported "collection" action an "exaction in the guise of a tax". In such an instance, both prongs of *Enochs V. Williams Packing Co.*, 370 U.S. 1 (1962) (government inability to prevail and equitable jurisdiction) would be met, to wit:

Plaintiff first seeks a determination as to whether officers or employees of defendant's agent disregarded provisions of the Internal Revenue Code or regulations promulgated thereunder "in connection with" collection activity in the absence of a valid, properly executed Certificate of Assessment; "exaction...in the guise of a tax." See:

*Enochs V. Williams Packing Co.*, 370 U.S. 1 (1962). If, upon evidence, the Court finds that such unauthorized actions were committed, <u>damages</u> — authorized by Congress — may then be determined; tort damages are in no sense the "refund" to which counsel alludes. Counsel's retreat to this issue demonstrates defendant's inability to address the issue of valid, existing assessment(s).

Counsel's reflex argument also ignores "the controlling significance of context" recognized by Ginsburg, J., in WACHOVIA BANK, N. A. V. SCHMIDT , ___ U.S.___, (04-1186, decided January 17, 2006), citing Citizens & Southern Nat. Bank v. Bougas, 434 U.S. 35. IRC section 7433 has, in all incarnations, authorized civil actions for damages resulting from disregard of <u>any</u> provision and <u>any</u> regulation "in connection with" any collection of tax, not simply "wrongful collection" as counsel mis-states; section 7433 contains no limitation to "disregard of 'collection provisions' or 'collection regulations' ", and counsel lacks authority to effect such change in the law.

FRIVOLOUS MOTION

It is now established, that the Court's power to hear the case at bar is no longer in question. In recent Memorandum Opinions, *Lindsey v. United States*, DDC 05-1761 (RBW), *Martin v. United States*, DDC 05-2506 (RMC), September 22, 2006, *Anderton v United States*, DDC 06-129 (RBW), the Court discussed this issue at length, and, relying upon *Arbaugh v. Y & H Corp.*, 126 S. Ct. 1235, 1245 (Feb. 22, 2006) and *Turner v. United States*, 429 F. Supp. 2d 149, 154 (D.D.C. 2006) (JDB), the Court (Walton, Collyer, and others) made clear that "failure to exhaust administrative remedies *is not a jurisdictional prerequisite to bringing suit*". (emphasis added)

Counsel's motion, on any grounds, relies solely upon the assertion of failure to exhaust administrative remedies in accordance with 26 C.F.R. § 301.7433-1. In *Lindsey v. United States*, DDC 05-1761 (RBW), (cited by *Martin v. United States*, DDC 05-2506 (RMC), September 22, 2006, and *Anderton v United States*, DDC 06-129 (RBW)), the Court provided an opportunity to include a "facial challenge" to 26 C.F.R. § 301.7433-1, and Plaintiff herein so includes a "facial challenge" to 26 C.F.R. § 301.7433-1 herein:[1]

FACIAL CHALLENGE

Plaintiff asserts that 26 C.F.R. § 301.7433-1 is an unreasonable interpretation of the current statutory provision; exceeds the authority of the current statutory provision by impermissibly extending the operation of the exhaustion requirement; and, by frustrating Congress' intent in creating, and amending, 7433; and by effectively converting a "7433 damages" claim into a "7422 refund" claim.

In the motion, counsel correctly reads § 7433(d)(1) in quoting "a judgment for damages shall not be awarded...unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service."

Counsel cites *Venen v. United States*, 38 F.3d 100, 103 (3d Cir. 1994), and *McGuirl v. United States*, 360 F. Supp. 2d 125, 128 (D.D.C. 2004), among others (some having nothing to do with the subject matter over which the Court has jurisdiction) in support.

With all due respect, the history of IRC section 7433 shows that *Venen* was

---

[1] And in the AMENDED Complaint, lodged concurrently.

correctly decided under TBOR I's express proscription, and is inapplicable with respect to TBOR III's language. The current regulation, upon which *McGuirl* was decided, and upon which the instant case hinges, is an unreasonable interpretation of the current statutory provision; exceeds the authority of the current statutory provision by impermissibly extending the operation of the exhaustion requirement; and, by frustrating Congress' intent in creating, and amending, 7433; and by effectively converting a "7433 damages" claim into a "7422 refund" claim.

The history, i.e., the evolution of Congress' language, shows that Congress, in proscribing a damages award absent the Court's own satisfaction with respect to administrative exhaustion - without reinstating TBOR I's express proscription - left the issue to the court's discretion.

HISTORY OF 7433  Taxpayer Bill of Rights (TBOR I)

Congress inserted 7433 into the Internal Revenue Code in the Taxpayer Bill of Rights. Although Plaintiff(s) have been unable to find the actual Act of Congress, a comprehensive discussion was published by the American Bar Association:

> "Section 7433 also removes tax collection controversies between taxpayers and the IRS from the jurisdiction of federal courts and places them in the IRS administrative bureaucracy. Section 7433(d) requires taxpayers to exhaust their administrative remedies before filing section 7433 actions in district court. In 1996, the Taxpayer Bill of Rights 2 (TBOR 2) eliminated the exhaustion requirement, permitting district courts to hear section 7433 claims provided that damage awards are reduced when the claimant does not exhaust administrative remedies."

The Bar is correct regarding the 1996 amendment.

HISTORY OF 7433  Taxpayer Bill of Rights II (TBOR II)

PUBLIC LAW 104-168 (JULY 30, 1996) 110 STAT. 1453, entitled "An Act To

amend the Internal Revenue Code of 1986 to provide for increased taxpayer protections," TBOR II's Title VIII, SEC. 802 amended Paragraph (1) of section 7433(d) to read:

> "The amount of damages awarded under subsection (b) may be reduced if the court determines that the plaintiff has not exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service."

The Bar then opined that

> "However, Congress reinstated the exhaustion requirement in the 1998 Act."

The Bar is not precisely correct in this assertion. TBOR III, found in the IRS Restructuring and Reform Act of 1998, Pub. L 105-206 (RRA '98), struck a delicate balance between TBOR I's "absolutely not" provision and TBOR II's "judgment may be reduced" amendment. Section 7433, as re-amended by TBOR III, is <u>silent</u> with respect to bringing or maintaining a 7433 action. The revision states no more than "...no judgment shall be awarded..." unless the Court is satisfied that administrative remedies available have been exhausted." (Paraphrased)    7433, in its current incarnation, neither prohibits, nor precludes, suit, as decided in *Lindsey v. United States*, DDC 05-1761 (RBW), *Martin v. United States*, DDC 05-2506 (RMC), September 22, 2006, *Anderton v United States*, DDC 06-129 (RBW), and others. To paraphrase the Bar, 7433 now permits "district courts to hear section 7433 claims provided that..." in the absence of the Court's satisfaction as to administrative exhaustion, "...no judgment shall be awarded...".

I respectfully direct the Court's attention to what the Bar had to say about the re-amendment:

> "Congress should not have re-imposed the exhaustion provision. Many plaintiffs

bring their actions to federal court under section 7433 because they do not trust the IRS to seriously consider their claims. Furthermore, most pro se plaintiffs do not understand the meaning of exhaustion of administrative remedies. These plaintiffs should not be penalized by their good-faith ignorance; instead, federal courts should hear their claims if valid. In addition, few pro se plaintiffs have actual notice of the process established by Treasury Regulation section 301.7433-1. Congress should understand many people's distrust of the ability of the IRS to proceed with their claims..."

The Court should take judicial notice of the Bar's recognition that "few pro se plaintiffs have actual notice of the process".

THE REGULATION IS AN UNREASONABLE INTERPRETATION

The current regulation requires that an injured Citizen wait up to six months for a ruling on an administrative claim before bringing a civil suit, failing, even under the deferential framework of Chevron U.S. A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, the standard of reasonable interpretation of a statute, and is intended to frustrate a 7433 Plaintiff, to wit:

The <u>half-year</u> waiting period is extreme. In almost every other instance, IRS is limited to (and may limit to) 30 days. Examples include Collection Due Process Hearing requests (30 days, imposed by Congress); pre-Notice of Deficiency letters (30 days). Even opportunity to petition for redetermination has a window of 90 days. Yet IRS chose to give itself <u>180 days</u> to decide upon an administrative damages claim. Few people, if any at all, could withstand the six month period for reasons known to, and published by, the National Taxpayer Advocate.[2]

THE REGULATION EXCEEDS THE AUTHORITY OF THE STATUTE

In construing 7433's current incarnation, the starting point must be the language

---

[2] SEE: excerpts from NATIONAL TAXPAYER ADVOCATE 2005 ANNUAL REPORT TO CONGRESS, below.

employed by Congress. See: *Reiter v Sonotone Corp.*, 442 US 330, 337, 60 L Ed 2d 931, 99 S Ct. 2326 (1979) and the courts must assume that the legislative purpose is expressed by the ordinary meaning of the words used. *Richards v United States*, 369 US 1, 9, 7 L Ed 2d 492, 82 S Ct. 585 (1962). 7433's current language must ordinarily be regarded as conclusive, *Consumer Product Safety Comm'n v GTE Sylvania, Inc.*, 447 US 102, 108, 64 L Ed 2d 766, 100 S Ct. 2051 (1980), and unless Congress has clearly indicated that its intentions are contrary to the words it employed in the statute, this is the ending point of interpretation. *Fuller v. United States*, 615 F. Supp. 1054 (D.C. Cal 1985; quoting Richards v. United States, supra.

7433's current language merely restricts an award of damages unless the Court is satisfied that administrative remedies (shown by Service Policy P-5-36, above, to be essentially unavailable absent judicial intervention) have been exhausted.

AVAILABLITY OF REMEDY

Based upon the language of the regulation itself, and upon repeated agency actions of the Internal Revenue Service demonstrating disregard of governing statutes, regulations, and Service policies, Plaintiff contends that the administrative "remedies" purportedly provided for - as implemented by regulation - are at best unavailable, and at worst, wholly inadequate.

As shown in Title 26 of the Code of Federal Regulations, IRS failed to prescribe the administrative procedure necessary to give effect to section 7433, as originally added, for over three years after Congress enacted TBOR I. Treasury Decision 8392, 57 FR 3536, necessary from and after November 10, 1988, was not promulgated until January 30, 1992, and might not have been effective until February 18, 1992.

In respect of Congress' removal of the jurisdictional prohibition in TBOR II, it appears that IRS failed to amend the regulation to reflect Congress' intent at all.

It is clear, however, that the current regulation, as amended by T.D. 9050, 68 FR 14320, was not promulgated until March 25, 2003, more than four years and nine months after Congress' re-amendment in TBOR III. This period of "unavailability" of administrative remedy provides the context in which the March 25, 2003 version of the regulation should be construed: IRS intends not to be sued.

To show that the above history accurately reflects IRS intent, the Court's attention is respectfully directed to IRS policy regarding return of amounts unlawfully collected.

Internal Revenue Service Policy P-5-36, published in the Internal Revenue Manual, at 1.2.1.5.9, is to refrain from returning amounts unlawfully collected. P-5-36 states:

> "(1)    Returning money wrongfully collected: This Policy Statement has been revoked."

Thus, even if IRS has collected unlawfully, and knows it, whatever Policy might have existed was revoked. The administrative remedy of filing a claim to recover unlawfully collected amounts is clearly unavailable when the Service Policy on such matters has been revoked.

REGULATION CONVERTS DAMAGES ACTION INTO REFUND ACTION

By requiring that Plaintiff(s) (claimants) place a specific value upon injuries claimed, the regulation effectively neuters the statutory provision in instances where, as alleged in Plaintiff(s) complaint, the threshold issue of whether an assessment has

been properly made is raised. If IRS refuses to investigate that threshold issue, IRS denies a meaningful Collection Due Process Hearing; a "collection" might not yet have occurred, yet Plaintiff's right to challenge the existence of the underlying liability - established in the statutory provision (6330(c)(2)(B)) - is thwarted. Defendant, in moving to dismiss the Complaint, primarily on this issue, conveniently overlooks the absence of a "refund" request.

THE REGULATION FRUSTRATES CONGRESS' INTENT

TBOR I, TBOR II, and RRA '98 are testaments of Congress' awareness that IRS cannot be trusted to administer the tax code without supervision. Indeed, in the words of former Deputy Assistant Secretary of Treasury Bradford DeLong, now a Professor at Berkeley,

> "The IRS's comparative advantage is using random terror to elicit voluntary compliance with the tax code...".

Congress intended that Citizens harmed by IRS' legendary disregard of governing statutes and regulations have an avenue to be made whole under section 7433, albeit with a prior administrative review. Once again, the key is availability of the administrative remedy. Availability can be likened to adequacy. As a matter of broad administrative law, if administrative remedy is inadequate, it need not be pursued.

The *Morton* Court supra, opined, at 235, opined:

> Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required. Service v. Dulles, 354 U.S. 363, 388 (1957); Vitarelli v. Seaton, 359 U.S. 535, 539-540 (1959).

As established in the Code of Federal Regulations, IRS refused to even establish procedures for four years after the right to bring an action was granted by

Congress, and currently imposes a prohibitive provision omitted by Congress. Administrative remedy, available in form, is unavailable in substance.

As stated by the Supreme Court in *Morton v. Ruiz*, 415 U.S. 199 (1974): The agency power to make rules that affect substantial individual rights and obligations carries with it the responsibility not only to remain consistent with the governing legislation, *FMC v. Seatrain Lines, Inc.*, 411 U.S. 726 (1973); *Dixon v. United States*, 381 U.S. 68, 74 (1965); *Brannan v. Stark*, 342 U.S. 451 (1952), but also to employ procedures that conform to the law. See *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 764 (1969) (plurality opinion). Lack of specific attention to the statutory authorization is especially important in light of the Supreme Court's pronouncement in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), quoted in *Adamo Wrecking Co. v. United States*, 434 U.S. 275, 287 n. 5 (1978), and cited in *SEC v. Sloan*, 436 U.S. 103 (1978), specifying that factors to be considered in giving weight to an administrative ruling include "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *SEC v. Sloan*, 436 U.S. 103, 117-118.

The regulation itself is the best evidence of "Lack of specific attention to the statutory authorization" (Skidmore) and failure of "thoroughness…in its consideration" (Sloan). In 301.7433-1's subsection (a), paragraph (1), "reckless or intentional actions" is changed; one must have "…damages sustained as a proximate result of the reckless or <u>international</u> actions…" (emphasis added).

To the extent that Treasury Decision 9050 "re-imposes" the more restrictive language of TBOR I, the regulation exceeds the authority of 7433 in its current form.

To the extent that Treasury Decision 9050 re-imposes the prohibition of TBOR I, the regulation fails to remain consistent with the governing legislation; and fails "all those factors which give it power to persuade."

Reviewing courts are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute. Such review is always properly within the judicial province, and courts would abdicate their responsibility if they did not fully review such administrative decisions. *National Labor Relations Board v. Brown*, 380 U.S. 278, 291-292.

## Motion to Amend

As further evidence of IRS bias, Plaintiff advises the Court of IRS' refusal to comply with 26 USC § 6320 by "predetermining" the determination of my Collection Due Process hearing under that section. I move the Court to allow my Amended Complaint, lodged concurrently herewith.

Respectfully,

Dated: November 22, 2006

Cassie Eleson

## CERTIFICATE OF SERVICE BY MAIL

I, the Undersigned, hereby declare that I am over the age of 18 years, and I [am] [am not] a party to the forgoing cause of action, and that on this 24th day of November, 2006, I placed the below-titled legal document(s) in the U.S. Registered Mail, postage prepaid:

AMENDED VERIFIED COMPLAINT, PETITION, AND CLAIM FOR DAMAGES, IN THE NATURE OF A COMPLAINT, PETITION, AND CLAIM FOR DAMAGES UNDER THE AUTHORITY OF 26 U.S.C. §7433, in Case no. 1:06-1553 (EGS)

RESPONSE TO MOTION TO DISMISS, in Case no. 1:06-1553 (EGS)

to:

PAT S. GENIS, #446244
Trial Attorney, Tax Division
U.S. Department of Justice
P. O. Box 227
Washington, DC 20044


Alberto Gonzales
United States Attorney General
950 Pennsylvania Avenue
Washington, District of Columbia 20530


_Cassie Oleson_
Declarant